1  John M Vrieze, CSB #115397
   William F. Mitchell, CSB #159831
2  MITCHELL, BRISSO, DELANEY & VRIEZE
   Attorneys at Law
3  814 Seventh Street
   P. O. Drawer 1008
4  Eureka, CA 95502
   Tel: (707) 443-5643
5  Fax: (707) 444-9586

6  Attorney for Defendants County of Del Norte,
   Del Norte County Sheriff's Dept., Frank Villarreal
7  and District Attorney Michael Riese

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10

11
   JOHN GIMBEL,                        CASE NO.: C 07-5816 CRB
12
           Plaintiff,                  DECLARATION OF JOHN M. VRIEZE
13
   vs.
14                                      Date: March 14, 2008
   STATE OF CALIFORNIA, COUNTY OF      Time: 10:00 a.m.
15 DEL NORTE, DEL NORTE COUNTY         Ctrm: 8, 19th Flr.
   SHERIFF'S DEPARTMENT, FRANK
16 VILLARREAL, DEL NORTE DISTRICT
   ATTORNEY, UNNAMED
17 ACCOMPLICE "DOE" TO
   VILLARREAL, DEL NORTE SUPERIOR
18 COURT,

19         Defendants.

20 _____

21
       I, John M. Vrieze, declare:
22
       1. I am a member of the law firm Mitchell, Brisso, Delaney & Vrieze, attorneys of
23
   record for County of Del Norte, Del Norte County Sheriff's Department, Frank
24
   Villarreal, and District Attorney Michael Riese. I have personal knowledge, except for
25
   matters stated on information and belief, concerning the facts set forth herein, and if
26
   called to testify I would and could competently testify to the following.

                                      1
                       DECLARATION OF JOHN VRIEZE

1      2. Attached hereto as Exhibit A, is a true and correct copy of respondent

2  Villarreal's Brief in opposition to Opening Brief of John Gimbel to Court of Appeal to

3  the State of California, appealing restraining order issued July 21, 2006 by Judge Follett,

4  Superior Court of the State of California, County of Del Norte.

5      3. Attached hereto as Exhibit B, is a true and correct copy of appellant's Trailing

6  Brief to Court of Appeal to the State of California, appealing restraining order issued July

7  21, 2006 by Judge Follett, Superior Court of the State of California, County of Del Norte.

8      4. Attached hereto as Exhibit C, is a true and correct copy of appellant's Petition

9  for Rehearing to Court of Appeal to the State of California, appealing restraining order

10 issued July 21, 2006 by Judge Follett, Superior Court of the State of California, County

11 of Del Norte.

12     5. Attached hereto as Exhibit D, is a true and correct copy of the unpublished

13 Decision in Frank Villarreal v. John Gimble, Case No. A115201.

14     6. Attached hereto as Exhibit E, is a true and correct copy of the Order of Court

15 of Appeal to the State of California in Frank Villarreal v. John Gimble, Case No.

16 A115201.

17     7. Attached hereto as Exhibit F, is a true and correct copy of plaintiff's

18 Complaint (Case No. C 070113 MJJ)(page 1).

19     8. Attached hereto as Exhibit G, is a true and correct copy of the Order Granting

20 Defendant's Motion to Dismiss ("District Attorney Defendants," "Sheriff Department

21 Defendant," and "County Defendants").

22     9. Attached hereto as Exhibit H, is a true and correct copy of the Order Granting

23 Defendant's Motion to Dismiss ("City Defendants").

24     10. Attached hereto as Exhibit I, is a true and correct copy of the Order Granting

25 Defendant's Motion to Dismiss ("State").

26

MITCHELL, BRISSO,
DELANEY & VRIEZE
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

2

DECLARATION OF JOHN VRIEZE

1    11.   Attached hereto as Exhibit J, is a true and correct copy of Plaintiff's

2  Amended Complaint, (Case No. C 070113 MJJ)(page 1).

3    12.   Attached hereto as Exhibit K, is a true and correct copy of the Motion to

4  Dismiss Amended Complaint (County of Del Norte Defendants)(page 1).

5    13.   Attached hereto as Exhibit L, is a true and correct copy of the Motion to

6  Dismiss Amended Complaint (Crescent City Defendants)(page 1).

7    14.   Attached hereto as Exhibit M, is a true and correct copy of the Order

8  Granting Dismissal With Prejudice (Case No. C 070113 SBA).

9    15.   Attached hereto as Exhibit N, is a true and correct copy of the Notice of

10  Appeal (Case No. C 070113 SBA).

11

12    I declare under penalty of perjury under the laws of the State of California, that the

13  foregoing is true and correct.  Executed this 4th day of February, 2008, in Eureka, CA.

14

15

16  John M. Vrieze

17

18

19

20

21

22

23

24

25

26

MITCHELL, BRISSO,
DELANEY & VRIEZE
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

3

DECLARATION OF JOHN VRIEZE

# EXHIBIT A

# In The Court Of Appeal Of The State Of California
## First Appellate District, Division Five

**John Gimbel,**

    Appellant and Defendant,

vs.

**Frank Villarreal,**

    Respondent and Plaintiff.

**Civil No. A115201**

(Del Norte Superior Court
  No. CV HS 06-1221)

# RESPONDENTS' BRIEF

The Honorable William H. Follett

DOHN R. HENION (SBN 095118)
County Counsel
Del Norte County
981 "H" Street, Suite 220
Crescent City, CA
Telephone: (707) 464-7208
Facsimile:  (707) 464- 0324
E-mail: dhenion@co.del-norte.ca.us

Attorneys for Respondent and Plaintiff:
FRANK VILLARREAL

# CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

There are no interested entities or persons to list in this Certificate per California Rules of Court, Rule 8.208.

Interested entities or persons are listed below:

Name of Interested Entity or Person

Nature of Interest

1.

2.

3.

4.

Please attach additional sheets with person or entity information if necessary.

Dated: February 2, 2007

                                        DOHN R. HENION
                                        COUNTY COUNSEL,
                                        DEL NORTE COUNTY


                        By:    _____
                               DOHN R. HENION


Printed name:       DOHN R. HENION
                    County Counsel

Address:            981 "H" Street, Suite 220
                    Crescent City, CA 95531

State Bar No.       095118

Party Represented:  Frank Villarreal

# TABLE OF CONTENTS

                                                                    Page

TABLE OF CONTENTS......................................................................... i

TABLE OF AUTHORITIES.................................................................... ii

I.   INTRODUCTION........................................................................1

II.  STATEMENT OF THE CASE ..................................................1

III. ARGUMENT ....................................................................................3

   A.   APPELLANT HAS THE BURDEN OF PRESENTING AN
   ADEQUATE RECORD TO THE COURT OF APPEAL. ...............................3

   B.   APPELLANT'S CONDUCT TRANSENDED PURE SPEECH INTO
   HARASSMENT WHICH PRODUCES SPECIAL HARM - AN AREA
   THAT THE GOVERNMENT HAS A COMPELLING INTEREST TO
   PREVENT – AND IS THREFORE DISTINCT FROM THE STRICT
   COMMUNICATIVE IMPACT OF THE SPOKEN WORDS..........................5

IV.  CONCLUSION ……….…….………….………………..…..…….……8

CERTIFICATE OF COMPLIANCE...................................................................8

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 142-145; 87 Cal.
  Rptr. 2d 132, 980 P.2d 846 ........................................................................8, 9
*Calhoun v Hildebrandt* (1964) 230 CA2d 70, 72, 40 CR 690 .............................5
*De Jonge v. Oregon* (1937) 299 U.S. 353, 364 [81 L. Ed. 278, 57 S. Ct. 255.....6
*Ensworth v. Mullvain* (1990) 224 Cal. App. 3d 1105, 1112 -1113, 274 Cal.
  Rptr. 447 ...........................................................................................5, 6
*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 486 [101 Cal. Rptr. 2d
  470, 12 P.3d 720 ...................................................................................8
*Gerawan Farming, Inc. v. Lyons*, supra, 24 Cal.4th at p. 491 ..............................8
*Kobey v. Morton* (1991) 228 Cal. App. 3d 1055, 1059, 278 Cal. Rptr. 530.)......4
*Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352,
  364; 93 Cal. Rptr. 2d 1, 993 P.2d 334 ................................................................8
*Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792-793, 218 Cal. Rptr. 39.........5
*Near v. Minnesota* (1931) 283 U.S. 697, 708 [75 L. Ed. 1357, 51 S. Ct. 625 .....7
*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life
  Activists*, 244 F.3d 1007 (9th Cir. 2001).....................................................10
*R.A.V. v. St. Paul* (1992) 505 U.S. 377, 389 [120 L. Ed. 2d 305, 112 S. Ct. 2538
  ....................................................................................................7
*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 628 [82 L. Ed. 2d 462,
  104 S. Ct. 3244 ...................................................................................7, 9
*Schraer v. Berkeley Property Owners' Association* (1989) 207 Cal. App. 3d
  719, 729-730 [255 Cal. Rptr. 453] ..............................................................9
*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912 .................5
*Utz v Aureguy* (1952) 109 CA2d 803, 241 P2d 639.......................................5

## STATUTES

California Code of Civil Procedure section 527.6 ...................................... passim
Pen. Code, § 118...........................................................................................7
Pen. Code, § 422...........................................................................................7
Pen. Code, § 653f .........................................................................................7

## RULES

Cal. Rules of Court, rule 14(a)(1)(c) .................................................................2
Cal. Rules of Court, rule 8.204(a)(1)(C). ...........................................................2

ii

# I.  INTRODUCTION

This is an appeal from the decision of the trial court under California Code of Civil Procedure section 527.6, finding that Appellant harassed Respondent and ordering Appellant restrained from contacting Respondent for a period of one year.

The unorthodox writing style contained in Appellant's Opening Brief presents a challenge in determining the relevant issues presented. Accordingly, the issues addressed in this Respondent's Brief represent our best attempt to crystallize and address those issues,

The issue before this court appears to be whether there was sufficient evidence to sustain the decision.

Appellant additionally argues that his contacts with the respondent were protected by his right to free speech under the First Amendment to the United States Constitution.

Finally, Appellant's Opening Brief is discursive and those facts unnecessary to this court's determination will not be addressed.

# II. STATEMENT OF THE CASE

In this matter Respondent filed a Request for Orders to Stop Harassment with the Del Norte County Superior Court. The matter was brought to hearing on June 23, 2006. The appellant failed to appear during the trial of the matter and an order was granted restraining Appellant from contacting Respondent for a period of three years. (RT 5:5- 5:15; 7:21 – 10:27) Respondent later claimed that he had been sitting in the wrong court even though the court's bailiff had checked that courtroom for his presence and he was found absent. (RT 11:9 – 16:2) On July 21, 2006, the court set aside its previous order and retried the matter. (RT 21:5 – 21:17)

1

At the retrial of the matter, Respondent, Frank Victor Villarreal, testified that he received approximately twenty-five telephone messages from Respondent that totaled approximately one hour in length. (RT 22:13 – 23:24; 25:24 – 25:27; 30:26 - 30:28) Generally, the messages constituted vulgar attacks on Respondent's character. (RT 24:26 – 25:3; 26:6 – 27:21) However, the third message also contained the comment that Respondent should kill himself. (RT 25:4 – 25:5) The Victim Witness Coordinator testified that Appellant's messages would have caused severe emotional distress to the person they were directed at particularly since Appellant had charges pending against him for making threats against another law enforcement agency. (RT 30:3 – 30:13)

Appellant testified that his brake lights were out because he had a defective brake switch and Respondent had stopped him. He estimates that he called Respondent twelve times and left forty minutes of messages. (RT 32:28 – 33:15) He also left messages with the Sheriff and talked to him about the incident. (RT34:11 – 35:13) He admitted using profanity. (RT 36:16) Respondent testified that Appellant's assertion that he would not call Respondent again could not be trusted by the court since Appellant "obviously can't let anything go."

The court found by clear and convincing evidence that Appellant engaged in a course of conduct that constituted harassment. Given what is known by Respondent about Appellant as well as appellants statements urging Respondent to commit suicide taken in combination with his vulgar language a reasonable person would have also suffered emotional distress over the conduct. (RT 38:1 - 38:9)

Appellant's Opening Brief fails to make any citation to the record before the trial court pursuant to Cal. Rules of Court, rule 8.204(a)(1)(C).

//

//

//

## III.   ARGUMENT

### A.   APPELLANT HAS THE BURDEN OF PRESENTING AN ADEQUATE RECORD TO THE COURT OF APPEAL.

To uphold an injunction under section 527.6, the court may first examine whether there is substantial evidence of harassment. It may then determine whether Appellant's conduct was not constitutionally protected, and thus capable of being enjoined.

The trial court found that Appellant's conduct constituted harassment, as that term is defined by section 527.6. There is substantial evidence that Appellant's conduct qualifies as such harassment so long as it was not constitutionally protected. The Appellant engaged in a continuous course of conduct in which he persisted in calling Respondent to suggest that he commit suicide because he had the perceived audacity to cite Appellant for failing to provide proof of financial responsibility. He called twenty-five times and left an hour of messages.

Section 527.6 'was enacted "to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution." ' [Citation.] Its purpose is 'to provide expedited injunctive relief to victims of "harassment." ' " (*Kobey v. Morton* (1991) 228 Cal. App. 3d 1055, 1059, 278 Cal. Rptr. 530.)

Under the statute a "person who has suffered harassment" may seek a temporary restraining order and injunction prohibiting the harassment. (CCP § 527.6, subd. (a).) "Harassment" is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at [the plaintiff] that seriously alarms, annoys, or harasses the [plaintiff], and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the plaintiff." (CCP § 527.6, subd. (b).)

It doesn't take an expert witness to observe that Appellant is extremely prone to perseveration. His contacts with law enforcement present themselves as the primary focus of this obsession. He was so consumed by such contact that the Appellant's Opening Brief is based on the premise that when Appellant was pulled, over the thirty-minute detention got in the way of his "24/7" perseveration[1] upon an appeal from a conviction for terrorist threats. In Appellant's view, this raises the specter of self-defense which justifies his multiple direct contacts with the Respondent to "chew him out." Unfortunately, Appellant appears unable to distinguish the line between protected "chewing out" ends and harassing conduct begins.

"The trial court's decision to grant a permanent injunction rests within its sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion." (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.)

Although the appellant contends that there is insufficient evidence to sustain the trial court's decision, the Appellant has the burden of presenting an adequate record to the court of appeal. *Calhoun v Hildebrandt* (1964) 230 CA2d 70, 72, 40 CR 690; *Utz v Aureguy* (1952) 109 CA2d 803, 241 P2d 639. Section 527.6 does not require the court to make any findings of fact (*Ensworth v. Mullvain* (1990) 224 Cal. App. 3d 1105, 1112 -1113, 274 Cal. Rptr. 447), and if parties do not request findings, it is appropriate for the appellate court to assume that the trial court made whatever findings are required to sustain its ruling. (*Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792-793, 218 Cal. Rptr. 39.)

Even when there is no oral testimony of emotional distress, the court may draw such an inference "from the demeanor of witnesses and their manner of testifying." (*Ensworth v. Mullvain*, supra, 224 Cal. App. 3d at p. 1110.) Here the trial

---

[1] "It meant it needed every fiber of my concentration and soul. (AOB 13:23-13:24); A distraction could and would be, clearly, deadly. (AOB 14:7)

court personally observed the demeanor of the witnesses testifying and found that all elements of harassment existed in this matter.

## B.    APPELLANT'S CONDUCT TRANSENDED PURE SPEECH INTO HARASSMENT WHICH PRODUCES SPECIAL HARM - AN AREA THAT THE GOVERNMENT HAS A COMPELLING INTEREST TO PREVENT – AND IS THREFORE DISTINCT FROM THE STRICT COMMUNICATIVE IMPACT OF THE SPOKEN WORDS

The conduct here is not constitutionally protected and therefore is a "course of conduct" under section 527.6 that can constitute harassment. The First Amendment of the United States Constitution provides in relevant part: "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble ..." These rights are protected against state interference by the due process clause of the Fourteenth Amendment of the United States Constitution. *(De Jonge v. Oregon* (1937) 299 U.S. 353, 364 [81 L. Ed. 278, 57 S. Ct. 255].) Article I, section 2, subsection (a) of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

The right to free speech, however, is not absolute. (*Near v. Minnesota* (1931) 283 U.S. 697, 708 [75 L. Ed. 1357, 51 S. Ct. 625].) The United States Supreme Court has made clear that there are circumstances in which spoken words or other forms of communication are not constitutionally protected: "[S]ince words can in some circumstances violate laws directed not against speech but against conduct (a law against treason, for example, is violated by telling the enemy the Nation's defense secrets) ... speech can be swept up incidentally within the reach of a statute directed at conduct rather than speech." (*R.A.V. v. St. Paul* (1992) 505 U.S. 377, 389 [120 L. Ed. 2d 305, 112 S. Ct. 2538]; see also *Roberts v. United States Jaycees* (1984) 468 U.S. 609, 628 [82 L. Ed. 2d 462, 104 S. Ct. 3244] (Roberts) ["[A]cts of invidious discrimination in the distribution of publicly available goods, services, and other

advantages cause unique evils that government has a compelling interest to prevent--wholly apart from the point of view such conduct may transmit. Accordingly, like violence or other types of potentially expressive activities that produce special harms distinct from their communicative impact, such practices are entitled to no constitutional protection"]; *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 486 [101 Cal. Rptr. 2d 470, 12 P.3d 720] ["in its scope, the First Amendment's right to freedom of speech is not unlimited"].) Our Supreme Court has pointed out that the free speech clause of article I of the California Constitution and its right to freedom of speech "are not only as broad and as great as the First Amendment's, they are even 'broader' and 'greater.' " (*Gerawan Farming, Inc. v. Lyons*, supra, 24 Cal.4th at p. 491.) The court noted, however, "that this general rule does not preclude the possibility of exception." (Ibid.) The freedom of speech clause in the California Constitution is, like the First Amendment to the United States Constitution, not absolute or unlimited. (See, e.g., *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 142-145 [87 Cal. Rptr. 2d 132, 980 P.2d 846] (Aguilar); *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352, 364 [93 Cal. Rptr. 2d 1, 993 P.2d 334]; see also *Gerawan Farming, Inc. v. Lyons*, supra, 24 Cal.4th at p. 493 & fn. 4.)

Our Supreme Court also has noted, "[m]any crimes can consist solely of spoken words, such as soliciting a bribe (Pen. Code, § 653f), perjury (Pen. Code, § 118), or making a terrorist threat (Pen. Code, § 422). ... '[T]he state may penalize threats, even those consisting of pure speech, provided the relevant statute singles out for punishment threats falling outside the scope of First Amendment protection.' [Citations.] ... . Civil wrongs also may consist solely of spoken words, such as slander and intentional infliction of emotional distress. A statute that is otherwise valid, and is not aimed at protected expression, does not conflict with the First Amendment simply because the statute can be violated by the use of spoken words or other expressive activity." (Aguilar, supra, 21 Cal.4th at p. 134.) If the expressive

6

activity "cause[s] unique evils that government has a compelling interest to prevent" or "produce[s] special harms distinct from their communicative impact," the activity is not entitled to constitutional protection. (*Roberts*, supra, 468 U.S. at p. 628.)

Appellant's activities are not constitutionally protected. The state has expressed, by statute and in the California Constitution (§ 527.6; Cal. Const., art. I, § 1), a compelling interest in protecting individuals from harassing conduct. Section 527.6 is a statute enacted " 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution' " (*Schraer v. Berkeley Property Owners' Association* (1989) 207 Cal. App. 3d 719, 729-730 [255 Cal. Rptr. 453]) by proscribing harassing conduct. There was substantial evidence that Appellant's expressive activities in the instant case constituted harassment under section 527.6, and that the activities did not stand alone, but constituted a "course of conduct" that "actually cause[d] substantial emotional distress to the plaintiff." (CCP § 527.6, subd.(b).)

Because there was substantial evidence that Appellant's activities invaded the rights of Villarreal and conflicted with compelling state interests, the expressive activities at issue were not constitutionally protected and fell within the "course of conduct" that could be enjoined under section 527.6.

Contrary to Appellant's assertions, *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 244 F.3d 1007 (9th Cir. 2001) does not provide justification for a direct telephone call to the arresting officer suggesting that he should kill himself. To the contrary, Planned Parenthood holds that *public* speeches advocating violence were given substantially more leeway under U.S. Const. than *privately communicated* threats. Contrary to the facts in this matter, In that case all the statements were made in the context of public discourse, not in direct personal communications.

IV.        **CONCLUSION**

For the reasons hereinabove referenced, it is respectfully requested that this Court affirm the injunction of the trial court below. It is additionally requested that the court award respondent its costs, attorney's fees and such damages as the court finds just to deter appellant from this sort of waste of the court's resources in the future.

DATED: February 2, 2007

Respectfully submitted,

_____
DOHN R. HENION
Attorney for Respondent
Frank Villarreal

### CERTIFICATE OF COMPLIANCE

I hereby certify that this brief has been prepared using proportionately double-spaced 13 point Times New Roman typeface.

According to the "Word Count" feature in my Microsoft Word for Windows software, this brief contains 2,768 words up to and including the signature lines that follow the brief's conclusion.

I declare under penalty of perjury that this Certificate of Compliance is true and correct and that this declaration was executed on February 2, 2007.

_____
DOHN R. HENION
County Counsel
County of Del Norte

8

# Proof of Service

STATE OF CALIFORNIA
COUNTY OF DEL NORTE

I, the undersigned, declare:

I am over eighteen years of age and not a party to the within action; my business address is 981 "H" Street, Suite 220, Crescent City, California. I am employed in Del Norte County, California.

On this date, I served the attached **Respondent's Brief** by delivering the following number of originals and copies in the manner shown below.

One original and four copies by express courier:

COURT OF APPEALS, FIRST APPELLATE DISTRICT
350 McAllister Street
San Francisco, CA 94102-3600

Five copies by express courier:

SUPREME COURT OF CALIFORNIA
350 McAllister Street
San Francisco, CA 94102-4873

One copy by personal service on February 5, 2007:

DEL NORTE SUPERIOR COURT
450 H Street
Crescent City, CA 95531

One copy by placing at my place of business a true copy thereof in a sealed envelope with first-class postage, for collection and mailing with the U.S. Postal Service where it would be deposited with the U.S. Postal Service that same day in the ordinary course of business:

John Gimbel
225 Brevus St.
Crescent City, CA 95531

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Dated: February 3, 2007

_____
**Jennifer L. Henion**

9

# EXHIBIT B

A115201
(CVHS 06-1221)

## COURT OF APPEAL OF CALIFORNIA
## FIRST APPELLATE DISTRICT
## DIVISION 5

| | | |
|---|---|---|
| **JOHN GIMBEL**<br>Appellant/defendant | ) <br> ) <br> ) <br> ) | **CASE NO.: A115201; APPELLANT'S TRAILING BRIEF IN APPEAL OF RESTRAINING ORDER (SUPERIOR NO. CVHS 06-1221)** |
| v | ) <br> ) | |
| **FRANK VILLAREAL**<br>Respondent/plaintiff | ) <br> ) <br> ) | |

-----------------------------------------------

## APPEAL FROM THE SUPERIOR COURT OF
## THE COUNTY OF DEL NORTE

Judge William Follet

## APPELLANT'S TRAILING BRIEF

John Gimbel in pro se
225 Brevus St.
Crescent City CA
95531
707.464.5908
*in pro se as appellant, for appellant*

John Gimbel
225 Brevus St.
Crescent City CA
95531
707.464.5908
in pro se
Appellant/Defendant

# COURT OF APPEAL OF CALIFORNIA
# FIRST APPELLATE DISTRICT

| | | |
|---|---|---|
| **JOHN GIMBEL** | ) | **CASE NO.: A115201; (CVHS 06-1221)** |
| **Appellant/defendant** | ) | **TRAILING APPELLANT BRIEF ON** |
| | ) | **APPEAL OF RESTRAINING ORDER** |
| **v** | ) | |
| | ) | |
| **FRANK VILLAREAL** | ) | |
| **Respondent/plaintiff** | ) | |
| | ) | |

-------------------------------------------------------

## TABLE OF CONTENTS

Pg.

1. TABLE OF CONTENTS ... 1
2. TABLE OF POINTS AND AUTHORITIES ... 2
3. Case must be dismissed ............................................................................6
4. Calls were made extremely close together w/intent of only singular message...............16
5. Court ignored evidence illegally, as usual.................................................17
6. Gimbel is and has been the only victim in the story; the subject speech intensely belabored that fact.........................................................................20
7. Query to court as to wanting subject speech lodged as tape, as well..........................26
8. Jurat.........................................................................................34

**Enclosures/attachments:**

*(Full transcript inclusion presently pending approval to submit extra exhibits...partial transcripts are included here....)*

| # | Description | # Pages |
|---|---|---|
| 1 | exh. A: entire transcript of subject speech of this case w/answering machine greeting: | 40 |
| 2. | exh. B: entire transcript of subject speech of this case w/answering mach. greeting <u>deleted</u> to show actual length: | 24 |
| 3. | exh. C: sheriff's call log of speech: | 1 |

# TABLE OF POINTS AND AUTHORITIES

**Constitutional Provisions**
Reference to U.S. constitution................................................pgs. 4, 7, 10, 15, 26 (5 times)

**Statutes**
Calif. CCP 527.6. (b) (3).....................................................................................................10

**Cases**
Hustler v. Falwell, 1969, Supreme Court.............................................................................2
Nichols v. Chacon, 110 F. Supp. 2d 1099 (W.D. Ark. 2000)...............................................5
Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997)................................................................5
Duran v. City of Douglas, Arizona, 904 F.2d 1372 (9th Cir. 1990) ...................................5
Gulliford v. Pierce County, #96-35614, 136 F.3d 1345 (9th Cir. 1998).............................5
Gertz v. Robert Welch, Inc., 418 U.S., at 339 -340 (1974) Supreme Court........................6
Baumgartner v. United States, 322 U.S. 665, 670 -671 (1944) S. Ct..................................8
U.S. v. Nolan L. Poocha, 9th Circuit Court of Appeals, 2001.......................................8, 12
Levine v. Clement, No. CIV. A. 03-30206-KPN, 333 F. Supp. 2d 1 (D. Mass. 2004). [N/R]
...........................................................................................................12

**Other Authorities**
"The Backstabbers".................................................O' Jays; Philly soul music, 60's, 70's.

Dear Court of Appeal:

In this case which wrought appeal, I will tell you the local Del Norte Superior court is rogue--big time. First amendment-rogue, too. They are hit-their-fishes'-heads...and run.... Not to mention hasty, unfocusing, earless, cursory, unintelligent, not allowing good review and not caring of pertinent facts. I have come to own a huge, permanent case of pity for anyone they call to their system, for anything. The sample they've made is succinct IN THAT they allow condemnation of speech without even bothering to look at more than 5%. And the whole speech has no evidence of actual threat, ("such and such will happen to you or someone"), showing such even from the sample taken at the restraining order hearing, (as it would the rest), and the speech merely shows a person with some good peeve, using some profanities to give a piece of his mind about some specific wrongs and atrocities that have been committed against himself--and repetitively, by nothing less than the callous, "heavy hand of the state." (Meant, in a sense, the same as "the county." Big government, generally; all its components) Moreover, this speech is to an albeit local, but clear, public official. *Hustler v. Falwell, 1969, Supreme Court*. This (anger/profanities) "must assuredly be wrong" in the same way that "Mad Magazine was assuredly written by Saddam Hussein so it IS disallowed in the U.S.A....as we all know." (Did David Souter say that last one? According to honorable william follet, who "has studied law" and oversaw the restraining order hearing in this case of CVHS 06-1221, A115201, I would think. Don't look; Follet studied to be an enmitous spider the whole while in reality! The shocking revelation. Like a spider, he didn't think anyone would notice his acts, because most of his fish go limp when he attacks slyly after his corrupt methods of evidence-review as I do show.)

This is the level of these idiots on speech in Del Norte. Obviously, I piss people off the way I write sometimes. But why haven't you U.S. government shot or pointed the guns at Don Rickles therefore? Am I just a handier target or

something? Will you put back my teeth that fell out from standing at a typewriter for 3 years writing to the state's heavy handed, gun-powered goon defenestration of my soul and spirit because of their self-aggrandizing lark of lies, nonsense and wrongful charges? pt...yeah, you bet. I'm "sure you will" what I've seen. (Another first amendment case--that they lost--which they brought against appellant will be mentioned more later, that I also showed well in my AOB, that computes this **3** years just mentioned.)

What we must do now is simple. I have never hidden this speech, nor do I shrink upon the suggestion by powerfully errant plaintiffs and his chortling fish-head bangers that I have said anything that requires my condemnation as one trapped by them. In fact, see pg. 25, line 14, the July 21, 2006 reset restraining order hearing transcript: ("RT," as Respondent apparently chooses to abbreviate when quoting this transcript) Gimbel: "I can play the whole thing, your honor."

Do you realize by their sample of the speech they took at the restraining order hearing July 21, 2006 this idiot local court has said in this speech case involving speech to a public official, (and containing no specific threat), **"Give us the evidence..." {"procedure"} ...and in the same breath, "We don't have to look at the evidence, and won't."** All in the same breath; out of both corners of theirs mouths; silver tongues; indian givers (of the amendments); double crossers (of the amendments)! Naturally, from this, it follows that these rogues will create punishments and steal The Peoples' souls, like mine, from their high towers, condemning my/our constitutional amendments for years, smugly like spiders who've just bitten off someone's head.

What we must simply do now is correct the machinery of such a rip off of rights, and request any finding of fact upon the...The Evidence. Oh gosh, that's new!--and near another full year of punishments against their victim, Gimbel, are now behind one already. Sorry, I made the evidence available, but they denied me, and the court is evil, condemning without reviewing, killing the spirit without even

(snot, snot) having to view the proffered evidence, the very evidence over which they accuse with all the state's gun barrels pointed at your face (literally) if you don't like..."what they do." (Cite: *"What they do; smiling in your face, the backstabbers"--O' Jays; Philly soul music, 60's, 70's.*)

We have a rogue court local here, sir(s), which has taken sanctions as punishments, killed therefore...and done so without even obligating itself to look squarely at the evidence. Never again, this night, this country's ways, please.

Simply now, this appellant requests this damn cur-lifornia local rogue court to be bypassed for their evil-ostensible, and an independent review, even of fact finding, (like "de novo"); also, similar to (petition for writ of) certiorari. To be sure, appellant has become intimately familiar (after 3 years doing nothing else for a living but legal work) with the intensity with which appeal courts are modus operandi to proceed with respect to the findings of lower courts, and that the rule of thumb is to narrow raaaather strictly to the record. Such narrowness or attitude, however, must not contribute to the obstruction, even destruction of good justice, though, so we must make adjustment. *(Full transcript inclusion presently pending approval to submit extra exhibits....)*

Hence, upon the foregoing, I not only request, I see that one must now submit the entire speech to this court. Too many obscene punishments, usurpations, sanctions, lies and denials have gone forth for years now already against appellant by these pigs and their court-whore-bedmates, unchecked, not even based on the actual evidence, nor even bothering to look at it. This is potentially high, high civil tort, such behavior by a court, and I am a bona fide subscribing member to **Jail4judges** since I've seen quite a few behaviors of judges, courts, et al. (key words, **Jail4judges**: South Dakota-begun movement: Judicial Accountability Initiative Law: "J.A.I.L.") *(Full transcript inclusion presently pending approval to submit extra exhibits....)*

It's not a ploy at all, my being late with the speech here, since loons are lame and I gave them the devil's chance to review the evidence as a court should. The entire subject speech to Villareal is attached as exhibit B (w/answering machine), and exhibit A (w/o answering machine to show actual length). The tape was finally handed to appellant via the Del Norte D.A.'s office on Sept. 5, 2006. It is authentic. Actually, it was 2 tapes; 1 for May 21, 2006, the other for May 29, 2006. *(Full transcript inclusion presently pending approval to submit extra exhibits....)*

## THIS CASE MUST BE DISMISSED
## DEFENDANT'S SPEECH NOT PROSCRIBED PER FIRST AMENDMENT

```
........................./¯/)
......................./¯ ./
.................../.../
............./¯/..../¯`.
........./'/.../..../....../¯\
.......('(...´...´.... ¯~/'...')
........\.................'...../
.........''...\.........._.·´
...........\.............(
.............\.............\
```

Cite 1:
Federal trial court rules that motorist's gesture of displaying his middle finger to an officer driving by was protected First Amendment speech; officer was not entitled to qualified immunity and could be held liable for arresting motorist for disorderly conduct. *Nichols v. Chacon, 110 F. Supp. 2d 1099 (W.D. Ark. 2000).*

Cite 2:
Action of passenger in moving vehicle of yelling "f--k you" and extending middle finger towards abortion protesters was protected speech under the First Amendment; passenger's rights were clearly established, so that officer was not entitled to qualified immunity for arresting passenger for disorderly conduct. *Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997).*

Cite 3:
Federal Appeals Court finds that profanities and obscene gestures directed at police officer by car passenger were speech and conduct protected by the First Amendment *Duran v. City of Douglas, Arizona, 904 F.2d 1372 (9th Cir. 1990).*

Cite 4:
**Verbal protests or challenges to the police are permitted, even if they knowingly hinder, delay or obstruct the police, appeals court rules; to be criminal, the words must be fighting words.** *Gulliford v. Pierce County, #96-35614, 136 F.3d 1345 (9th Cir. 1998), cert. denied, 1998 U.S. Lexis 4989.*

Ahem, the first 2 cases above are "instigatory"; in other words, the finger exhibitor "started it"; and, did so "out of the blue." A spurious "drive by" event. And both were, nevertheless, protected. The 3rd case appears to be a car passenger (car not randomly passing by or in flight and flipping or yelling profanities) objecting, likely, to being stopped, or objecting to a demand or request by the officer within that stop.

Mr. Gimbel's speech in the present case was entirely a **reaction, a protest,** to a police mentality, not any kind of an unprovoked, out of the blue, instigatory event. You idiot court and prosecution around Del Norte kindly glean firstoff that such immediately dampens and mitigates {so called} "harassment intent," for one. (protests not proscribed: *Gulliford v. Pierce County, #96-35614, 136 F.3d 1345 (9th Cir. 1998), cert. denied, 1998 U.S. Lexis 4989),* and Gimbel addressed that (police) mentality significantly to his audience, Mr. Villareal, not making the entire speech without at least some "social value" (under our Constitution *"there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." Gertz v. Robert Welch, Inc., 418 U.S., at 339 -340 (footnote omitted)).* Mr. Gimbel's speech to Villareal addressed a veritable gold mine of well described injustices the sheriff's dept. had, and was contemporarily yet further, ala Villareal, putting him through.

We argue, for one thing, intensely, that the speech is clearly a reactionary, not a spurious, initiating or instigating type of vehicle, which seriously diminishes and mitigates defendant's intent as "spuriously assaultive," "attacking" or "harassing"; rather, his tenor is, therefore, to be set-as...to be recognized

as...DEFENDING, protesting. Mr. Villareal, in other words, DID SOMETHING and the speech ensued.

Gimbel's speech was not delivered "out of the blue" or "for no reason." Gimbel was poised with perennial peace rather than any such "speeches" to Villareal--has never spoken one such speech, in fact any word at all, to him in the 18 years he's lived here, and never wanted to--until the sheriff's institution violated him further via Villareal. His speech was a reaction to the insane ripout of his life by cops who were wrongful killers and arrestors of amendment speech in another case, (CRM 04 9308; A110914), and showed and criticized this come-along deputy that he was endangering that very case on appeal by causing Gimbel to be distracted from his appeal work and have to deal with the/**another** deputy's ignorance--this time on self insurance--where before it had been--their errancy was proved retroactively on reversal--a first amendment item (CRM 04 9308).

Subsidiarily supporting of this further, we make another clear point that Gimbel has no history, even in the case per a phone log we will show, of "hanging around Villareal's answering machine." Such inbred "harassment mentality" is absent by this observation, additionally, and points further to an instance of speech wrought by an external cause, not a penchant for, nor an instance of, "harassment," or some type of "smart alec-harassment attitude." It helps disprove the nature "of a harasser sort" in Mr. Gimbel, for one. A true harasser will never leave you alone. Gimbel avers he speaks his mind, (a risky proposition in Crescent Okie-town, to be sure), then leaves.

Gimbel further avers in the case at bar, that Mr. Gimbel in no wise "started anything"; in fact, his fiery political speech to Mr. Villareal is very logically the "raw and primordial, first-come {first served} 'restraining order' in the whole damn picture here!! And that 'restraining order' was issued against Mr. Villareal via a speech. It said, "Back off, clumox, about distracting my appeal with your ignorance on self insurance." It said nothing more additionally, in its own way, Gimbel's

speech overall made clear, "...You sheriff's dept. have been killing me for near 3 years; I don't need **another** sample, especially one that stands to endanger my appeal work in the first matter."

"My head's being twisted off, {by sheriff's dept.}, " and "head twisted off" was said no less than twice right at the start to Villareal. (see exhibit B, transcript by Fitzgerald Depositions, Eureka, pg. 1 line 19, 20; and pg. 16, lines 7-11). The speech in every way then unfurls the value of such a lament and torture, albeit convolutedly in places, that, via Villareal, Gimbel is now literally having "his head twisted off" with Villareal's uncalled for self insurance distraction to Gimbel's travail and appeal work, harshly criticizing the sheriff's dept. for its wrongful arrest for first amendment speech (CRM 04 9308; A110914).

Gimbel's speech was the...showed the...primal cause for any restraining order, and against Villareal instead--called for it in a sense--in this whole matter! He went to fair length to show Villareal that he (Gimbel) was a victim of sheriff's and deputies' ignorance, malfeasance and evil. This is protest, folks; what's your Okie problem? Is there any other word that comes to mind for Gimbel's clear theme in the speech to Villareal per the previous 2 quotes? ("Back off, clumox"; "...You sheriff's dept. have been killing...etc."). Only **restrain** comes to mind. Yes...it says, essentially, "you damn pigs should **restrain** your errancies, evil, malfeasance and further samples; also, ala Villareal with another sample." Gimbel's health, or access to "nifty vehicles" in the spirit of bar-trained, and the immense devotional to his appeal work in A110914, (CRM 04 9308), had absolutely no such time as to fill out and file some restraining order or injunctive relief-request on the self insurance thing botched badly by Villareal, when Villareal lightning struck. Gimbel allotted about 1/2 hour to use some pure speech to show the man the dirt they, the sheriff's dept., and now himself, (Villareal), really stunk of, instead of get dressed up, and take several days or a week to sort through getting something like that "filed." If

you listen to the speech, Gimbel clearly whammed Villareal and the dept. with a hefty criticism of their ways and what it was causing him, as follows:

**"One of the prerogatives of American citizenship is to criticize public men and measures."** *Baumgartner v. United States, 322 U.S. 665, 670 -671 (1944).*

The fact that Gimbel's criticism interlaced with profanities in a good faith criticism, is similarly not proscribable: (again, your 9th circuit right down home California and this area)

"Criticism of the police, profane or otherwise, is not a crime." *U.S. v. Nolan L. Poocha, 9th Circuit Court of Appeals, 2001:*

Finally, injunctive relief statutes underscore the above...that there's been another satan-harper-valley-margarita hamstringing of Gimbel's life and time for self-aggrandizing and malicious sport in Crescent Okie-ville, another misguided judy-persecution against Gimbel for pure speech:

ii. CCP (Injunction) 527.6

527.6. (b)...

(3) "Course of conduct"...*Constitutionally protected activity is not included within the meaning of "course of conduct."*

In fact, the course and theme within the speech, after eliciting "head twisted off," ("you're causing me distraction"), is blatantly unfurled as a criticism for the exact Villareal distraction to that appeal in CRM 04 9308, A110914, in the following: (All pages of transcript noted below are found in exhibit B):

Pg. 4, line 5, from transcript of tape:

"I'm very, very tired of what -- what pigs do; and it's very difficult being <u>saddled</u> with the **** that they do."

Pg. 4, line 22:

"Based on the smell of pigs that I've -- I've had  in my life <u>these last couple of</u> <u>years,...</u>"

Pg. 4, line 25:

"...based on the treatment that I perceived...." {of myself by errant cops}

Pg. 7, line 14:

"You disobeyed {also, deprived me of} the law which gives me a certain provision, by statute, to be self-insured; and I had the correct papers on me." {criticism right on the money}

Pg. 7, line 19:

"...<u>by causing me another couple of days in preparation, which, in my state of</u> <u>health, it is actually a couple of days of state of preparation</u> that I have been caused in and about the time at which I am {to be} {effecting} defecting (sic) {an} appearance over a pile of..."

<u>{the previous quote includes clear reference to distraction caused by his</u> <u>errancy, and that this, conjunct the overall speech, is all about him seriously</u> <u>and actually endangering my appeal work with such}</u>  (obvious reporter error: should read: "...at which I am to be effecting an appearance...."; they sound very

similar; she used "...I am defecting an appearance..."; she just couldn't get it; can happen; my "make sense," oratory, is not that bad!)

Pg 31, line 1:

" that you'll get the gist of the extreme enslavements I have been put through in the internet case and that other annoying influences can be very annoying if they're going in the direction that yours evince to, for example,"

{<u>previous quote: "other annoying influences"...represents another clear attempt to show that Villareal's errancy on self insurance was distracting my appeal work.</u> Since I had just gotten done in many earlier pages, (read transcript), in telling him of the vast enslavement, etc., the conclusion is likely drawn by the listener--should be--that if I'm "already enslaved 24/7 by the appeal work and case in CRM 04 9308, and A110914," as I so belabored in the transcript pages, then Villareal distracting me results in me having to "find" a 25 hour day! Yeah, tell me another one. Forcing me to do the humanly impossible, no less! A clear, but convoluted description of the extreme endangering distraction to my appeal work he was causing, is, therefore, found overall in the subject speech. And, "twisting my head off," said earlier in the speech to Villareal as I've noted, becomes hereby, the clear reference to, and symbol of <u>impossible-to-deal-with distraction</u> unfurling at this point, so full of callous disregard by the sheriff's dept. and Villareal, that, because of being forced to do the humanly impossible, it results in something akin to this...twisting right off. I've said I do think quicker with a word processor than in live oratory, ( a disgrace to the health of the body to be sure), but one's plight of distraction, endangering the work (of Gimbel's appeal) can be gleaned from the overall speech to Villareal}

Pg. 33, line 3:

"My head's really gone, thanks to all this -- this **** I've been through these years and smelling this stuff come along here."

{the previous quote is another affirming portrait that "smelling this stuff coming along here," namely Villareal's errant, false and ignorant dealing with self insurance...directly affirms again the nature of endangering distraction...where he can only make a very bad situation worse; all because of his ignorance. Later then add to it his callous disregard, and deliberate indifference for the 1st amendment generally}

Pg. 34, line 23:
"My life has been redirected to a case of enslavement to try to free myself from this--this--in the appeal and everything and this so-called...."

{previous quote is further affirmation of extreme hardship already in place, directly infers one is not needing further idiocies, also, distractions obviously, by sheriff's dept.}

Pg. 35, line 3:
"...is what you --you guys did to me, you know. I'm sitting here bearing all this...."

{previous quote is further affirmation that you should never bother to call a cop for anything like yourself hanging on a cross; for anything, therefore; they don't respond to disasters. They just come and lick blood off your wounds, or to usurp your spirit. I call Villareal "Satan" twice at the end, therefore. In fact, the evidence shows, despite the lament of distraction to my appeal in the speech, that he chose then immediately thereafter to distract me 10,000 times more yet than the unacceptable distraction of having to deal with his errancy on the self insurance

part, (well covered here), BY KNOWINGLY, UPON HEARING THIS SPEECH OF LAMENT AND DISTRACTION BY ME, designed and easily effected to add months he would distract me further with the certain restraining order. He was the vinegar, the spear in the side, and relished and relishes it. The name is apposite.}


Pg 36, line 2:

"-- the composite of all these rip-outs...."


{previous quote continues to refer to 1. illegal rip out by sheriff of my life in CRM 04 9308; also, now, 2. to ripping out of my time further by Villareal's errancy on self insurance; "composite" suggests multiple, illegal infringements by sheriff; in turn suggesting and/or affirming therefore greater probability for distraction of any kind, as well as the specific distraction to my appeal work which I belabor.}


Miscellaneous cite 5:
Officer violated arrestee's First Amendment rights by arresting him for disorderly conduct for yelling obscenities at a Canadian flag being carried in parade for the purposes of expressing his political opinion about the Canadian government's lack of support for U.S. military actions in Iraq. Officer was not entitled to qualified immunity from liability, as the arrestee's comments did not constitute "fighting words," and a reasonable officer would have known that there was no probable cause for an arrest. *Levine v. Clement, No. CIV. A. 03-30206-KPN, 333 F. Supp. 2d 1 (D. Mass. 2004). [N/R]*


Cite 6:

From: U.S. v. Nolan L. Poocha, 9th Circuit Court of Appeals, 2001:
""Similarly, in Duran v. City of Douglas, Arizona, 904 F.2d 1372 (9th Cir. 1990), we held that Arizona's disorderly conduct statute did not permit a police officer to arrest an individual who directed a series of expletives and obscene hand gestures at the officer. A police officer ejected Duran from a bar after he threatened the bartender, and Duran left the bar in a car driven by his wife. Soon thereafter, the officer saw Duran making obscene gestures and yelling profanities at him from the car, and arrested him. Id. at 1374-75. We held that yelling obscenities at a police officer did not constitute fighting words proscribed by the Arizona disorderly conduct statute,3 and therefore that the officer had no cause to detain Duran. Id. at 1377. Just like the individuals in Gulliford and Duran, Poocha

used profanity to express his disapproval of an officer's conduct.
Criticism of the police, profane or otherwise, is not a
crime. Hill, 462 U.S. at 462-63. Poocha's yelling "fuck you"
at Ranger Lober was no more likely to provoke a violent
response from the officer than Duran's tirade of obscene comments
and gestures. We have repeatedly emphasized that
"while police, no less than anyone else, may resent having
obscene words and gestures directed at them, they may not
exercise the awesome power at their disposal to punish
individuals for conduct that is not merely lawful, but protected by
the First Amendment." Duran, 904 F.2d at 1378. Poocha's
speech is not stripped of its constitutional protection simply
because it is accompanied by the aggressive gestures involved
-- clenching his fists and sticking out his chest. 4 We therefore
conclude that Poocha's speech did not constitute fighting
words prohibited by § 2.34(a)(2)."

As stated by the high court:  "The freedom of individuals verbally to
oppose or challenge police action without thereby risking arrest {about
the same thing with persecutory, malicious prosecution, not so?} is one
of the principal characteristics by which we distinguish a free nation
from a police state." *Id.* at 462-63, 107 S.Ct. at 2510, 96 L.Ed.2d at
412-13.""

Additional discussion by on the previous cite:

Compare, if you will, the physical presence of someone sticking out his

chest and making aggressive gestures while being profane, and it being found

protected, to Gimbel at the other end of a mile-away phone, talking. In fact Duran

v. City of... had a rather vigorous dissenting opinion (judge Tashima) on this very

point, but the majority overrode him.

You have in the case at bar, too, about an exact parallel in a sense, where, in

the cite, the officer attempted to ram a charge of "disorderly conduct" against the

speaker, though the speaker was not proscribable. We see Villareal simply snotted

to ram a restraining order and charges similarly against Gimbel, and for similar

reasons.

One final, further vindicating buttress:

Recalling the earlier:
"One of the prerogatives of American citizenship is to criticize public
men and measures." *Baumgartner v. United States*, 322 U.S. 665,
670 -671 (1944).

Let me add, per the above cite, that if you don't think cops are "public men," and don't think their every move against one's self, even their mere presence, is a public measure, or of public men, you're the biggest fool yet to hit the BigTime. They are, moreso, public figures than your president, and millions of grass root people know THE RIGHT ARM OF ANY POLITICAL ADMINISTRATION IS TOUCHING--OR VIOLATING--THEM **VIA THE POLICE** (and often various other government agencies that are more in direct contact with persons.) In fact, the exact right arm of ANY given administration or presidential incumbent, IS the police (and military; being similar). The president is FAR from the "icon" target of the most vehement political criticism! To the grass roots folk, it would be more the government that "screws with them directly," and on the day to day basis and personal level, not the president. What Gimbel has come at odds with in the case of "upright," cop-loving types, judges, apparently narrow thinking judges and other "authority" in this Del Norte "prison-loving town," is that they can't see from the viewpoint of those who have been severely victimized by cop atrocities across their lifetimes. It appears the court, made of such "cop approving" types, are **actually unable** to "see a cause" if it involves their "dear police," which might produce such as a protest speech delivered to Villareal.

THE CALLS WERE A TIGHT, TIGHT "BUCKSHOT" PATTERN, ALL
OCCURRING BETWEEN 10:05 AND 11:22 AM ON MAY 21, 2006 A
PATTERN DENOTING THE UNLOADING OF A SINGLE MESSAGE,
NOT "HARASSMENT" AT ALL OR WITH SUCH INTENT;
RESPONDENT AND GOONS HAVE SLYLY CRUCIFIED APPELLANT
ON A BELIE OF ANSWERING MACHINE *CHARACTERISTICS* WHICH
ONLY ALLOW CERTAIN MINUTES, PRETENDING TO CALL THIS
SINGULAR SPEECH "HARASSMENT" BY THESE CHARACTERISTICS,
MAKING GRANDIOSE, SATAN SUGGESTIONS APART FROM THE

### DENIED EVIDENCE IN THE SUBPOENA THAT GIMBEL WAS "HANGING AROUND THE PHONE" DAYS AND DAYS, HOURS AND HOURS; THEY'RE FULL OF IT BEYOND REDEMPTION FOR THAT BEGUILEMENT OF JUSTICE, PLOY--ESPECIALLY DOING THEIR FILTHY SANCTIONS AND PUNISHMENTS WITHOUT REGARD OR ATTENTION OR CARE TO THE EVIDENCE ITSELF, OR THE EVIDENCE OF THE PH. LOG

Another item of evidence the trial court "never bothered with" though defendant adamantly sought its immediate inclusion, was a phone log of the calls to the answering machine to which the subject speech was made. To prove this, go to pg. 57 of the clerk's transcript, showing a subpoena to the sheriff's dept. as early as July 18, 2006 in this wanton crucify-Gimbel-for-fun game, even before the restraining order hearing!...a subpoena for the phone log. (This subpoena was identical to the subpoena-exhibits A, B, C at the very end of the clerk's transcripts to this appeal, A115201, (vol. 1 of 1, pgs. 1-98), showing a date there of Aug. 14, 2006. Factually, appellant tried about 4 times with no success-allowed in each instance by local "justice" to subpoena the mere record of the phone logs. Most of the proofs of service of these subpoenas are in the clerk's transcripts. The sheriff's phone logs are included here now as exhibit C. They were obtained through the D.A. and given to appellant very close to mid-December, 2006 after appellant was forced to spend nearly 1/2 year begging and seeking the log under this filthy pervert system of "justice" or "rights."

### WHAT THIS SHERIFF'S LOG FINALLY SHOWS, NO THANKS TO THE ERRANT LOCAL SUPERIOR COURT'S IGNORE OF RIGHT EVIDENCE, THEIR IGNORING VIEWING EVIDENCE ALTOGETHER

Let me first state that of the 2 days on which a call was placed, of the speech to Villareal, we agree that one refers to May 21, the other to May 29, both 2006, per transcriber, exhibit B and/or A. Be very aware, if not already, THAT THE MAY 21st WAS ABOUT 6,831 WORDS IN A WORD PROCESSOR COUNT OF THE TRANSCRIPT. THE MAY 29th WAS 97 WORDS. For all practical purposes, the whole of these was as "a singular speech," as I will show--but the scant 97 words already strongly evince that some kind of closing statement in the speech was being intended--a fact--not annoyance or harassment. True, the 97 words or so came on a separate day, but were in no wise intended as some harassment or harassment-annoyance *scheme*, therefore *intent*.

What the subpoenaed information shows, and I now alert you to it, in part by other means, is that Gimbel was "inking" in a speech to Villareal that day of May 21, 2006 to his answering machine. Like writing in a way. People don't seem to be properly straight, though apparently aware the speech was predominantly May 21, 2006, that Gimbel was putting a speech down (via an answering machine) not making the broad, repeat call backs AT ALL that might be considered "badgering" in intent.

To wit, from exhibit B: (use exhibit B):
(A brief note: for page numbers, use only the page number at the bottom center to locate the pages itemized below, then use the line numbers present there.)

Pg. 4, line 3: "We'll continue a non...." {sic--"Well, continuing on...."; reporter mishear}{continuing a singular speech, is obvious, not repeating-type "harassment."}

Pg. 9, line 16: "So, continuing on...." {continuing a singular speech, is obvious, not repeating-type "harassment" or intent to annoy with repetition}

Pg. 18, line 14: "So continuing on, Mr. Villareal...." {continuing a singular speech, is obvious, not repeating-type "harassment" or intent to annoy with repetition.}

Pg. 5, line 22: "To wit:" {interrupted by answering machine} then pg. 6, line 19, {coming right back in, <u>OBVIOUSLY CONTINUING EVEN IN MID SENTENCE BY RESUMING HERE WITH JUST WHERE I LEFT OFF BEFORE THE MACHINE INTERRUPTED; RESUMING WITH:</u>}: "To wit: Mr. Villareal...." {A singular speech in intent; protest; ZERO repeat-annoyance-type element; repetition manifestly not intended by this evidence.}

Pg. 12, line 11: {just after answering machine cut out and interrupt}: "Where was I...." {<u>continuing a singular speech,</u> is obvious, not repeating-type "harassment" or intent to annoy with repetition.}

Pg. 20, line 13: "And that may be the **ulterior** --" {answering machine cutout, then,}...then pg. 22, line 11: " Well, so where was I? Yeah, **ulterior**...."
{CLEAR, HOT <u>SINGULAR</u> SPEECH INTENT VIA RESUMPTION OF "ULTERIOR," AND "...WHERE WAS I?," NOT AN ACROSS-HOURS OR DAYS ATTEMPT TO ANNOY.}

Pg. 24, line 16: "One day blitz"; then pg. 25, line 25, {after machine interrupt} " So where was I?  Yes.  One-day blitz...." {<u>continuing a singular speech,</u> is obvious, not repeating-type "harassment" or intent to annoy with repetition.}

Pg. 29, line 1: " I was just cut off there again on the answering-machine..." {"JUST CUT OFF"; obviously not coming in any hours later, but right away; a singular speech; <u>continuing a singular speech,</u> is obvious, not repeating-type "harassment" or intent to annoy with repetition.}

---

All of the above tend to show rather clearly this was a <u>singular</u> speech, not

"call-backs" to harass or annoy. By no intent to annoy. Solidly, to effect a protest speech, rather. Intent to protest, period. An exercise of a right to self defense as well.

The subpoenaed information of times of calls shows an attempt, similarly and further, to unload a singular speech, not call-backs across hours or days or weeks or months by any intent to annoy with the intent of repetition, or "badgering," which earmarks clearly the "annoy" minded person. A singular speech is NOT badger.

The scant, closing 97 words to the speech on May 29, 2006--no callback on the machine; one call; were as-if to say simply, "What?! Still no apology?" (See the physical last 2 pgs., marked pgs.1 and 2 of exhibit B for transcript of this 97 or so words.) This was its entire intent, as my May 21st speech to Villareal had belabored well, "impactions" etc., telling him that I know I was and am a victim of the sheriff's dept. (more on this closing 97 words in a minute farther below).

Recognize well by viewing the speech to Villareal, that I declared my victimization well in that speech to Villareal that we now view in the case at bar. I will now show this. That's what's so insane to me; I declare it--victimization--before <u>anything</u> happens, yet I'm the one who gets whacked unmercifully further, shortly thereafter. As if I've never existed or ever shall. So help me God, you bastards in this system, every corner, need "an awakening."

GIMBEL HAS BEEN THE EXACT VICTIM IN THE STORY ALL ALONG BY THE EXACT SUBJECT SPEECH, BEFORE ANY ATTEMPT AT A RESTRAINING ORDER EVEN EXISTED, BUT NOBODY PAID ANY HEED TO THAT; IN FACT, THEY ONLY VICTIMIZED HIM MORE

All words of "impaction," "bear," "ripped out," "victim," etc., I now will show in the speech to Villareal, the subject of this case, exhibit A, (or exhibit B),

are direct reference to Gimbel being a victim of the sheriff's dept., then system generally, in the wrongful arrest for protected speech in that certain "internet case," CRM 04 9308, arrest April 8, 2004, (four) acquitted June 17, 2006 (six). Remain aware that the speech, theme to Villareal focuses then, by its very nature, that "we don't need more sheriff's ignorance or malfeasance on some other event by that dept. at all, especially one that is causing a huge, huge turmoil, distraction to the appeal in CRM 04 9308, (A110914), to boot" (Villareal's not believing any such thing as self insurance to exist, or refusing recognition of proper papers showed him).

For the search-words and quotes that follow, use exhibit B (speech to Villareal WITH answering mach.) to locate:

The speech to Villareal is, of itself, by the many statements I make in it clearly showing impaction and victimization, therefore, also an affirmative defense. To your awareness, via search-word in the speech to Villareal, I used the word "impact" or impaction no less than 4 times in talking to Villareal, describing myself, referring to negative and extreme negative impaction to me by the sheriff's dept. and system. (pg. 36, line 8; pg. 36, line 14; pg. 37, line 10; pg. 37, line 25). "Victim" was used once, referring to that I am one by their hands (pg. 3, line 3). "To bear" or "bearing" was used FOUR times, clearly in the sense of insufferable or "impaction," the same (pg. 34, line 23; pg. 35, line 4; pg. 36, line 10; pg. 36, line 11).

I know there were even more descriptive pointings-to of victimization of me in the speech to Villareal. Here's another: Pg. 24, line 13: (again, use bottom pg., center, for pg. locator): "I'm beaten to death -- browbeaten to death -- and attaining the ultimate gyp of the universe..." referring again to what the sheriff and system were putting me through. I'M THE VICTIM long before anything else ever happened in the case we now focus to.

Sheesh...you can stop right here and get out, get off, according a rightful, affirmative defense--VIA THE ORIGINAL SPEECH ALONE.

Oh god, another...more: Pg. 36, line 22: "...and it was much to my doom, sir; broken sh*tless across the ears; {years--sic} life ripped out..." referring to the court, cops, D.A., system doing that to me again. NOT A VICTIM?! Man, you creeps are sumpin'. It's...yours is the lie that surpasseth all understanding (ala Episcopalian rites passages). Using nothing less than the vehicles, tools, power, forms and mandates of the state to tell such lies in the first place, while keeping Gimbel robbed eternally.

And another: Pg. 16, line 19: "I've had my life ripped out two years" is a MOUTHFUL OF VICTIMIZATION IN THAT INTERNET CASE (CRM 04 9308), SAME AS PUNISHMENT, <u>WHEN THE SPEECH IN THAT CASE WAS PROTECTED ALL ALONG.</u>  We're going to find shortly a proof, too, in a civil case issuing, that there was ZERO probable cause for that case-arrest as well, rest assured. The damages will be bigger. But, even as such, the damage is already done.

Another: Pg. 20, line 7: "I'm ripped out for good...." A further statement describing victimization. Another: Pg. 22, line 12: "Why I was ripped out." Another: Pg. 22, line 24: "...ripped out since then." Another: "Pg. 23, line 17: "...since he's {3rd person; refers to "Gimbel"} been ripped out...." Previous 3 quotes all further statements clearly describing victimization of Gimbel. Another: Pg. 33, line 12: "...my computers ripped out." Another: Pg. 34, line 1: "At any rate, I also had ripped out, you know, everything I live for pretty much in and around my premises...."

"Ripped out..." is a term describing here a punishment in every way; a sanction against...and a sanction taken against one for protected speech. This was VICTIMIZATION, don't kid yourself, and I FELT it. Another: Pg. 36, line 9: "I'm ripped out completely...." Another: Pg. 36, line 12: "...and ripped out." Another: Pg.

36, line 23: "...life ripped out." VICTIMIZATION OF GIMBEL=RIGHT TO SELF
DEFENSE.

And more victimization told to Villareal: Pg. 20, line 1: "...this whole rip-out
of my life for these last couple of years. And it's been twenty-four/seven, giving me
the sh*t end of all sh*t ends." You've got a victim, Judy, not to mention a
preemptive affirmative-defense declaration by the speech to Villareal. What do you
do? What did you do? Don't come back.

Another: Pg. 36, line 3: "...these rip-outs."

As many of the descriptions of Gimbel's victimization that there were in the
speech to Villareal, subject of this case, I've undoubtedly overlooked many more.
In fact, now "enslave" or "enslaved" or "enslavement" appears no less than
SEVEN times in my speech to Villareal describing further my victimization by the
cops, court, prosecution and system. (pg. 20, line 3; pg. 31, line 2; pg. 34, line 24;
pg. 35, line 1; pg. 35, line 2; pg. 36, line 9; pg. 36, line 12--SEVEN).

THIRTY TIMES, (30), as the preceding, I announce myself the victim
in the speech to Villareal, therefore. Before this filthy, anti-1st amendment lie of
a restraining order even came into existence. It is unfathomable you have then
multiplied by dozens the victimization of me further with your false charges,
(CVHS 06-1221), and specifically, you read the same as...that "being a victim is a
crime requiring further persecutions." You came to punish me with mountains of
garbage-charges for telling myself a huge victim. The local court will be
remembered worse than bin Laden of my life's time you've belied and wasted.
Right down home. Never even bumped their faggot heads as their goons knocked
over my 2 computer towers in the internet case, (CRM 04 9308), NOT EVEN
RETURNED TO DATE. I have always said this is JUST how insane cops,
prosecutors, judges are. The sample is beyond perfect.

The speech to Villareal was, therefore, an extremely good faith protest,
where not an exact act of self defense.

Well, so back to the closing 97 words on the separate day. When I got the transcript, I was in fact surprised I didn't see that I had specifically said, "What, still no apology?" or similar. In every way, it was, to me, as-if the same. (I'm thinking I may have said that to Wilson, actually, on a similar speech of length left previous to the one to Villareal. This was a talk to Wilson's answering machine about the Villareal infringement of my time over Villareal's malfeasance on self insurance left about the day of the ticket, May 16, 2006 in the evening, or very close to that time.)

At any rate, it was and is a closing statement. (I would have to check the recording to Wilson which I do have.)

You know one way I know it was my final and closing, short statement to him? Nothing of the badger-intent? Because this Villareal man's stink was simply not going to take any more of my time beyond that closing 97 words--IOW's he's not worth it past the 40 minutes he's taken already, being one way to put it "from the heart." (Again, the deadly appeal crunch surfaces that I described in CRM 04 9308, if you recall some of my earlier descriptions throughout writings to this case.) IOW's I knew there was to be not another call to him past that scant, closing 97 words simply because his ilk "ain't worth the time it's taking from my studies."

MATHEMATICAL PROBABILITY ALSO WILL TEND TO REVEAL THAT THIS SCANT 97 WORDS was my last statement to Villareal, of a single, singular speech, (I hope is established by now), refuting all intent to "badger," "harass" or "annoy" in the more earmarked, repetitive senses.

That is, if you look at the so called evidence, the 2 days when a call was placed, being May 21, 2006 and May 29, 2006, the transcript exhibit A or B, and ask what they "describe," one way to say that is by building a type of formula inference, prediction formula, based on some of the following facts and conclusions:

1. Gimbel placed 6,831 words to Villareal's machine on May 21st, 2006.

2. Gimbel placed 97 words to Villareal's machine on May 29, 2006.

Can one draw a conclusion from the evidence as to his "intended' behavior by re-stating the above, and as the obvious? Or to any predicted behavior? As follows:

3. That Gimbel is evidenced to be a man who places a speech on a start day (May 21); then, 8 days later (May 29) comes back and places .01419 of the number of words that he did previously (97 divided by 6,831 = .01419).

4. OK, so far, so good. We have "the criminal pattern"; we can predict the future behavior.

5. However, when you plot the exact behavior, there is seen no future behavior likely, which befalls then, to that harassment was never an intent. TO WIT:

6. Based on "Gimbel's known behavior," if you plot the line-slope as to what you think is Gimbel's "next harassing move," you find, from the evidence gathered, that after the 97 words spoken on May 29, that Gimbel will "strike again" 8 days from there (would be June 6, about) and speak .01419 words of the words he spoke 8 days previously. (From the "behavior pattern" graphed in item 3., previously.) That comes to .01419 multiplied times 97 words, which = 1.376 words. Are you kidding? This Gimbel is in a state of "harassment" or "annoy" with 1.376 words?! He's not a repeater; a badger, and mathematically so. Then, 8 days OR ANY FUTURE DATE FROM THE 1.376 WORDS PREDICTED TO BE SPOKEN ABOUT JUNE 6, THE MATHEMATICAL PROBABILITY OF EVEN ONE SINGLE LETTER OF THE ALPHABET BEING SPOKEN TO VILLAREAL'S ANSWERING MACHINE IS NOW PERMANENTLY ZERO.

This is a reasonable proof that "annoy," "badger," "harass," "repetitively, {an earmark}," WAS NOT GIMBEL'S INTENT. PROVED, WHERE NOT GOOD, STRONG EVIDENCE.

The first infamy-notice of "a restraining order" came on June 6, 2006 late in the afternoon. No call was placed that day during the hours beforehand, either. Nor ever intended to. There simply weren't planned to be ANY further ongoing into the future by appellant's specific design, rest assured. "Piece of mind" was long over.

## LODGING OF AUDIO TAPE

In the court of appeal's discretion, the subject speech is ready to be lodged as a tape as well, to this appeal.

---

Well, the preceding represents pretty much my trailing reply. Given some serious, scurrilous misleads and lies in the representative-for-Respondent's reply brief, by Dohn Henion, I will now take the several pot shots at it, that it deserves.

For one, observe how his conclusion, pg. 8, admonishes the court to impose fines "...sufficient to keep appellant from exercising any {so called} stink-merican 'right' to defend oneself"--the way one clearly reads his statement--I thought I'd heard the vilest things earlier against the constitution until now. Obviously, in the case of Gimbel, he suggests by this (though the rest of the citizens of the u.s. of america may own an "inalienable right" to defend oneself against charges, present one's evidence, testimony and confront one's accusers), that Gimbel can be freely denied, deprived, robbed of such as far as Henion is concerned. Don't be taken in by this vile, anti-constitutional nutcase. PER THIS NUTCASE, MR. HENION FOR THE RESPONDENT, "GIMBEL MUST BE DEPRIVED OF DEFENDING HIMSELF WHEN CHARGED," against all present provisions of the constitution. "SINCE IT'S ONLY GIMBEL, "HENION IS UTTERING, "GIMBEL'S RIGHT TO DEFEND HIMSELF, CONFRONT ACCUSERS, PRESENT EVIDENCE AND TESTIMONY AS PROVIDED BY THE CONSTITUTION, SHOULDN'T EXIST." Mr. Henion is a dangerous,

precarious and loony, strolling nutcase against anything the U.S. constitution has ever mandated for all, on that one.

Now, I could maybe understand such a comment if I was the ATTACKER, that is, the PLAINTIFF (you know, the "frivolous suit"-stuff). But to tell one, or try to create, "as one's only right," the requirement to go limp when struck with charges?! When someone you don't expect to starts attacking you with charges as the plaintiff? On into the future for Gimbel? Get outa here. This is all being suggested by some bent-rim jerk posing as county counsel methinks. Additionally, how does he think it looks to me to see this evil county go snot-up, suck up (steal is probably the truth) the tax dollars, then using the heavy hand of the state against Gimbel, an evil hand which I have clearly proved and identified herein...to watch this evil commandeer their county counsel as some kind of a *backup malicious prosecutor* against this single, extremely poor-health, grey man, Gimbel? Frankly, instead of fund their county counsel as one backup malicious prosecutor against Gimbel, rather, Villareal's overseers should buttkick-force Villareal to do his own legal work and briefs if he can type. Yes, if he can type 20 WPM or more, that's what I think. I've never held it against a man if he can't type, so I will add that if he can't, his having Henion there is fine with me. This buttkick-force 'im--if applicable--would be good news for the 3 years the local Okies have usurped my existence, enslaved me against my will standing at a typewriter now for 3 years fending felony harassments of me BY, malicious lies BY, the local goons. Is the local Okie camp's little Fauntleroy, state's-heavy, evil hand going to put my teeth back in that fell out while--because, clearly--I was forced to stand these lengths at a typewriter, fending malicious garbage and consummate lies by deranged, local Okie authority? ptth..."I'm just sure you were" It's being spent for a backup malicious prosecutor, rather, in the name of "american rights," though.

Remember, this level of Gimbel's former life-destroyed, re-enslaved to a typewriter and fending because of these Okies is EXACTLY what happened in their other first amendment, local internet posting-case, (CRM 04 9308; A110914). And note in the acquittal after over 2 years in that case, (on June 17, 2006), the more than "favorable termination," (42 USC 1983 lingo-criteria-elements of cause of action), where the warrant judge, now also on the appeal, rounded the acquittal to a UNANIMOUS vote for same. However, even today, under these Del Norte self-aggrandizing, 'authority' bags of evil wind, who so casually destroyed this citizen wantonly across years for no reason at all, this American-made acquittal still rings perfectly hollow nearly a year later. For a total of near 3 years now they have ripped Gimbel's life out from him, not restored by even 1 piece of it yet, his property, to date. (The 'arrest' in that case had been April 8, 2004--oh four, acquittal June 17, 2006--oh six.)

Let me now note here respondent's representative seems to be engaging in some kind of aspersion gambit. To wit: "unorthodox"; "perserveration."

(The 2 words just mentioned, to be discussed, are found in Respondent's reply brief, hereafter "RRB," pg. 1, 2nd paragraph from top; pg. 4, 2nd line from top, respectively.)

Is "unorthodox" to suggest Gimbel is "not one of us"?--a leper maybe? A sly and not too subtle gambit. Why does he include this term "as some argument," or obviously thought to include as part of his sway-the-court, gambit, without pointing to one single SPECIFIC that exemplifies it? What? Syntax? Grammer? Spelling? Unwieldy sentences? Be specific you moron juice Del Norte slime. What is the specific of "unorthodox"? The truth you don't like that shows you as a felony harasser maybe? So you resort to this name calling? Obviously.

Are we going to take such name calling seriously as "part of legal argument"? I usually take the time to point to something specific when I dreg up a surly noun, adjective or two--yes I do. Idiots abound in the legal system; this I've

found. So one does have to guard. Specifics MUST accompany the name calling, and I caution the court not to be fooled by this heavy handed liar of the county--I guess state, too--who would offer his lazy man's work, then connive to own the highest kill rate off his found-victim-fish, being Gimbel. And Gimbel has not done anything illegal, but seek to destroy him they do, like yapping chihuahuas and pit bulls, owning man's tax-bought...with their sly weapons. The Del Norte, quintessential-Satan rig needs a final shakedown where they have so cozily felony-harassed Gimbel, lying to him across the years with his former pursuits yet nowhere in sight.

On the "perserveration," he (Respondent's representative) obviously has cast aspersion upon my use of the word "devotional," attempting directly to convert *that same word "devotion" or "devotional"*--look carefully as I show you now--to some form other than its original use as "devotion." E.G., look now at the footnote to the very word "perserveration" on pg. 4 of Respondent's brief: Note 2 quotes in the footnote by Respondent from AOB. *Do you realize* the word "devote" or "devotion" in the AOB precedes these 2 quotes in the footnote no less than FOUR times, where "devotional" is **directly** the antecedent of both these quotes, describing devotion-eternal in nature to the effort of tendering legal matters, being an attorney (one's own), being thorough in one's legal matters so that furtherance of justice may ensue, etc.? This rotten tomato head county counsel can't read. He's never read the law on any of this, either, o court of appeal, don't be fooled. He just wants to hit and run on his intended fish--innocence is "not an issue" to them once they get rolling with their LIES.

Is maybe religious "devotion" now wrong, too, by this creep? And, we know millions out there who take their *jobs* seriously, as well, with exemplary <u>devotion</u>.

Is there something wrong with a dedicated, <u>devoted</u> attorney, **in pro se** or not?

According to this creep, apparently, in his aspersion rush, there must be.

I ask this court if "*the effort of tendering legal matters, being an attorney (one's own), being thorough...etc.*" as/per the RRB, pg. 4-footnote, which directly refers to devotion to such tendering, is not a virtue ANY attorney MUST own, should own, should strive for, in pro se or not, be determined to follow?

((One thing I will acknowledge, though...at least we know, from his own brief, that, of his sample, he does at LEAST take seriously and follows his own advice to laugh off any "devotion" or striving for accuracy in his own brief. (giggles) (Maybe it's "excusable" under his " need-to- prevaricate statutes," I don't know. That's not say others have to follow that, though.))

Devotion is "every fiber," "concentration," non-distraction, let it hereby be promulgated for all. Clean it up antagonist. Your reading skills are atrocious.

Perserveration...perserveration...no question...the Respondent's vermin representative has officially hijacked "religious, virtuous and proper devotion," occupational and work devotion, which I've described using only the word "devotion," and tried to airliner-ram it down this court's throat with his entire re-make of the word "devotion," remaking it to"perserveration"--to suggest types of "psychotic obsession." Cull this guy. He's numbered. It's as simple as he avoids eye contact with honest, virtuous and loyal "devotion" altogether. Maybe this court can wise them up for the destruction they've wantonly caused "appellant" {read: victim} We'll see.

Get these mentally retarded creeps out of here, and tell them to leave appellant alone.

In the very same sentence of his first use of "perserveration," pg. 4 line 2 from top, (did he mean "perserverance" maybe?), worms of vermin go squiggling via his mouse/pen yet further, his whole brief a rife ploy to be a can of them, methinks, where, Lo!, I see in the near-one year of this case, and any other case Gimbel has ever been in, <u>THE FIRST</u>, <u>THE ONLY</u>, <u>THE NEW</u>!--USAGE TO COME INTO BEING--USE OF THE WORD "TERRORIST"--JUST CAME

INTO BEING!  VIA THIS NUTCASE REPRESENTATIVE FOR
RESPONDENT! (Respondent's brief, pg. 4, line 6 from top).

How about that...what the cat just dragged in...the word "terrorist..."?
Respondent has brand-spankin'-newly! just now,  in his aspersion gambit here now,
brought to Mr. Gimbel's already-persecution,  some brand new word for the cases
already studied across the years, or long since adjudicated!

Well, well, well....

Well, obviously Dr. Juris Stupid here, county counsel, is trying to be
"criminal-contemporary" with use of this word "terrorist...." shoving it up to the
court's dog-wagged, rear-brief-smelling-that-he is, nose. I demand this court of
appeals to look ANYWHERE in the stack of ALL records in the internet case, and
in all cases of Gimbel including this one, (CRM 04 9308; A110914;
CVHS 06-1221; A115201), and see definitively, in the 2-3 plus years, in reams of
court files 8"-12" deep in these cases, that, definitively, NOT ONE SINGLE
PERSON has EVER used the word "terrorist..." in conjunction with ANY case of
Gimbel's to date. He has just popped the word up here to your noses just now, 3
years Johnny-come-later, to try to sway...to see just how filthy a vermin bag he can
be by such a come-along term usage.

If it please the court, let me note here at this time that Gimbel's appeal brief
in A110914 was about 200 pgs. which this local Del Norte slime caused (won on
appeal; protected speech; even the idiot judge who wrote the warrant, who sat on
the appeal panel over 2 years later, topped off the unanimous acquittal; this was
MORE than favorable termination). These 200 pgs. were but the tip of any berg in
the overall of that case.

If it please the court, as mentioned, the certain civil case complaint C07
113JL is near 600 pages. Tip of the berg in the overall. Thousands of hours of
utterly reviling enslavement they caused.

Now, per Respondent's contention or suggestion that "a discursive brief" produces unnecessary facts: (Respondent's pg. 1, 5th paragraph from the top.)

Wordsmyth: "Discursive":

Part of Speech adjective    Pronunciation

dih skuhr sihv Definition 1. ranging over numerous topics, esp. in **an orderly or coherent way**. Example a discursive essay on Chaucer.

Definition 2. **proceeding by reason** rather than intuition, as an argument or discourse. Synonyms <u>deductive {deduction (3)}</u> , ratiocinative {ratiocination} Similar Words <u>inductive</u> , **reasonable** , **Aristotelian** , **rational** , **logical** Related Words <u>cursory</u>

Thanks for the compliment! And please get it straight. Aristotle was the very father of Western science. Why  suggest to this court good facts are unnecessary? He would be the first to say all *FACTORS* must be entered to obtain and certify the scientific result. *It's not part of the contribution to the scientific result otherwise.*

Additionally, respondent apparently has the reading skills anyway of a toddler, even if he designed to soak up other material and relevant facts, ("discursive" stuff), as follows:

E.G., note his attention-draw to a quote on pg. 2, lines, 6-10 from top:

There you will read how he quotes Baxter of Victim Witness, where she is saying that "BECAUSE appellant had pending charges against him for making threats against another law enforcement agency...that would have caused 'emotional distress.' " The damn respondent here can't and didn't read the next lines at all in those transcripts, (and how much else didn't he?), if you will, WHERE THE COURT CORRECTED HER, saying that those "pending charges" <u>**WERE ALREADY ACQUITTED ON APPEAL AND FOUND AS PROTECTED SPEECH**</u> (RT 30:14--30:15). <u>THAT'S RIGHT. PROTECTED SPEECH</u> IS ZERO CAUSE FOR ALARM OR ANY DAMN THING ELSE. Naturally, the

respondent's representative, Henion, sees fit to quote her misinformation. Then sees fit to avoid the quote that corrects her. What scum of this counsel !

The court doesn't have to tolerate this kind of deliberately unfocusing, excuse me, DE-focusing attempts to kill or sully their fish with it, simply because they know they won't get an innocent fish by the law. They see fit to use lies, misleads and untruths, this being their only hope to destroy their fish. That's all of their case; lies or misinformation, including not knowing 1st amendment stuff or the law. The respondent's quote LINKS UP to nil, shows ZERO causality or cause--HE IS INCITING A COURT WITH DIRECT LYING--THERE IS NO "BECAUSE" WHICH SUPPORTS HER STATEMENT--FICTION--NEVER EXISTED AND NEVER CAN--NOTHING SUPPORTIVE OF ANY CONTENTION FOR "EMOTIONAL DISTRESS" THEREFORE WHATSOEVER DUE TO PROTECTED SPEECH FROM THE CASE SHE REFERS TO--this is a brief-filibuster of outrageous mislead, deception by respondent where not outright the same as lying, therefore, right here in the appeal process! It's the lying and quality of read you expect from shitmerican goons who have persecuted me--I will concede that though. (I hope the court of appeal isn't fooled by these gloss-it-over-for-their-fish rogue court-goons-persecutors, though! shezam!) She, IOW'S, offers ZERO support for her mere opinion, her own misinformation to the court--AND THEN THE AUDACITY OF THE "GREAT AMERICAN"-FALSE PROCESS, WHERE THEN THE RESPONDENT'S REPRESENTATIVE GOES QUOTING THAT SHIT-MISINFORMATION FURTHER IN A BRIEF DOWN THE LINE--DOUBLE JEOPARDIZATION--LIKE SOME KIND OF ROULETTE--THE PLOY OF ATTEMPTS TO BRIEF WITH INSANE LIES AND MISINFORMATION REPETITIVELY TO A COURT--a dangerously half-cocked ploy in a court of fact

/// 

///

///

///

///

///

///

///

///

finding. Respondent is dredging up toilet paper with these paragraphs of doctored quote inclusions here, expecting to "swing some of it up to the court." And it's been used-paper, is the paper he wrote this on, anyway. "Enjoy(n)" such antics by the deranged who are representing respondent if you can, o CA court of appeal !

The Del Norte, lying, unfounded persecutors, cops, courts and malicious persecutors of Gimbel need **The Big Shakedown** for their filthy ploys of lies--scum.

I could do another 30 pgs. about the garbage in Henion's writing. Garbage is the only thing he's "flying tight" about.

ptwwpt...are these Okies done bothering me, your excellency?

Dated: _Feb. 15, 2007_          JOHN GIMBEL,
in pro se

WORD COUNT

The word count of this brief (not including exhibits) lists as 10,167 in the program Microsoft Word 2000 in which it was created.

Exhibit A

(Full transcript inclusion presently pending
approval of application to submit extra exhibits....)

John Gimbel
225 Brevus St.
Crescent City, CA
95531
707.464.5908
in pro se

Sept. 11, 2006
A115201

TO ANY COURT IN THE ABOVE CASE:


I, John Gimbel, certify under penalty of perjury, that I gave two exact and true copies
of the only 2 cassette, audio tapes, the subject speech of the above referenced case, which were
received from the Del Norte D.A.'s office about Sept. 5, 2006, to:

   Lori Fitzgerald, of "Fitzgerald Depositions, Inc.," Eureka, CA. on about Sept. 11, 2006

who was then instructed to transcribe the entire contents of these tapes to a written
transcript.

and that exhibits A (w/o answering mach.) and exh. B (w/ answering mach) herein contain the

subject speech as she transcribed it. *(The completel transcript inclusion  presently pending approval to submit extra*

*exhibits....)*


Dated: _Feb. 15, 2007_        _____
                               JOHN GIMBEL

**EXHIBIT A**

FITZGERALD DEPOSITIONS –– (707) 442-5345

1  Transcription of tape one of two, entitled "Chew-out Speech

2  of Frank Villareal, May 21, 2006." Tape received at

3  Fitzgerald Depositions, 730 Seventh Street, Suite C,

4  Eureka, CA, 95501; from John Gimbel, 225 Brevus Street,

5  Crescent City, CA, 95531, on or about September 12, 2006.

10  Tape one of two transcribed as follows:

11

12       MR. GIMBEL: This is John Gimbel. I did –– I got

13  a ticket from you the other day. I believe it was May

14  16th, on a Tuesday. You know, I'm getting so tired of

15  having to talk to some of you cops for some of the things

16  that you do. But –– and I've been giving an awful lot of

17  thought to what happened there the other day. In fact,

18  I –– since that time, I have been tossing and turning in

19  about the same way, as if my head has been pretty much

20  twisted off altogether day and night, if that says anything

21  about the matter.

22       I'm a terrible speaker. Please bear with me.

23  I'm not really nervous because I think I've got you in the

24  wrong on this thing, even as such, when I feel I'm right.

25       Well, the ticket number was 011270. We appear to

```
┌─────────────────┐
│ Arrow shows     │
│ Lori's pg.      │ ─────────────────────▶   1
│ numbers         │
└─────────────────┘
```

1  have you in a rather severe state of ignorance as to the

2  law and we're finding that a very serious little matter,

3  actually, since you were the purported person supposed to

4  know probably -- probably supposed to know it, by every

5  standard and indicator, better than most.  If you don't,

6  don't be mettling with citizens as if you did; right?

7  Well, we've got a case here where you didn't; and you went

8  out mettling, okay.  The fact of the matter is you -- you

9  asked me for my -- my evidence of financial responsibility

10  up front, after the stop on the brake lights.  And I handed

11  you the exact papers that I had on that, which are current

12  and proper, and showed you the headers saying DMV, cash

13  assignment to DMV.  You appeared not to have -- not to

14  know, actually, what self-insurance is by you saying at one

15  point something like, "I don't know anything about that."

16  And at one point you were looking at the papers and saying,

17  "But I don't see a vehicle license number in here

18  anywhere."  Well, the fact of the matter is your ignorance

19  is -- is (unintelligible); it's tragic.  You're a piece of

20  shit, to put it mildly, actually.  And I'll work up to

21  something less than mildly before this little conversation

22  with you is over, I'm certain.

23          In regards to your malfeasance, in fact,

24  actionable tort in the eyes of the law, it could either be

25  a criminal tort against you and/or civil.  Of course, I'm

Lori's pg. numbers, etc.  ⟶  2

1  going to settle for civil only.  We'll let you go out and

2  EXHIBIT A; entire speech w/o answering machine          EXHIBIT A

Exhibit B

(Full transcript inclusion presently pending
approval of application to submit extra exhibits....)

John Gimbel
225 Brevus St.
Crescent City, CA
95531
707.464.5908
in pro se

Sept. 11, 2006
A115201

TO ANY COURT IN THE ABOVE CASE:

I, John Gimbel, certify under penalty of perjury, that I gave two exact and true copies
of the only 2 cassette, audio tapes, the subject speech of the above referenced case, which were
received from the Del Norte D.A.'s office about Sept. 5, 2006, to:

Lori Fitzgerald, of "Fitzgerald Depositions, Inc.," Eureka, CA. on about Sept. 11, 2006

who was then instructed to transcribe the entire contents of these tapes to a written
transcript.

and that exhibits A (w/o answering mach.) and exh. B (w/ answering mach) herein contain the

subject speech as she transcribed it.  *(The completel transcript inclusion  presently pending approval to submit extra*

*exhibits....)*

Dated: _Feb. 15, 2007_        _____
                                                    JOHN GIMBEL

1  Transcription of tape one of two, entitled Chew-out Speech

2  of Frank Villareal, May 21, 2006.  Tape received at

3  Fitzgerald Depositions, 730 Seventh Street, Suite C,

4  Eureka, CA, 95501; from John Gimbel, 225 Brevus Street,

5  Crescent City, CA, 95531, on or about September 12, 2006.

6

7  Tape transcribed by Lori Fitzgerald, CSR 7151, State of

8  California, on September 18 and 19, 2006.

9                    * * *

10  Tape one of two transcribed as follows:

11

12        MR. GIMBEL:  This is John Gimbel.  I did -- I got

13  a ticket from you the other day.  I believe it was May

14  16th, on a Tuesday.  You know, I'm getting so tired of

15  having to talk to some of you cops for some of the things

16  that you do.  But -- and I've been giving an awful lot of

17  thought to what happened there the other day.  In fact,

18  I -- since that time, I have been tossing and turning in

19  about the same way, as if my head has been pretty much

20  twisted off altogether day and night, if that says anything

21  about the matter.

22        I'm a terrible speaker.  Please bear with me.

23  I'm not really nervous because I think I've got you in the

24  wrong on this thing, even as such, when I feel I'm right.

25        Well, the ticket number was 011270.  We appear to

                                    1

1  have you in a rather severe state of ignorance as to the

2  law and we're finding that a very serious little matter,

3  actually, since you were the purported person supposed to

4  know probably -- probably supposed to know it, by every

5  standard and indicator, better than most.  If you don't,

6  don't be mettling with citizens as if you did; right?

7  Well, we've got a case here where you didn't; and you went

8  out mettling, okay.  The fact of the matter is you -- you

9  asked me for my -- my evidence of financial responsibility

10  up front, after the stop on the brake lights.  And I handed

11  you the exact papers that I had on that, which are current

12  and proper, and showed you the headers saying DMV, cash

13  assignment to DMV.  You appeared not to have -- not to

14  know, actually, what self-insurance is by you saying at one

15  point something like, "I don't know anything about that."

16  And at one point you were looking at the papers and saying,

17  "But I don't see a vehicle license number in here

18  anywhere."  Well, the fact of the matter is your ignorance

19  is -- is (unintelligible); it's tragic.  You're a piece of

20  shit, to put it mildly, actually.  And I'll work up to

21  something less than mildly before this little conversation

22  with you is over, I'm certain.

23         In regards to your malfeasance, in fact,

24  actionable tort in the eyes of the law, it could either be

25  a criminal tort against you and/or civil.  Of course, I'm

2

1  going to settle for civil only.  We'll let you go out and

2  run your little charade of nonsense against other citizens

3  just as long as you pay up front to some of your victims,

4  as -- as the law will permit.

5      ANSWERING MACHINE:  Your recording is too long.

6  To replay your recording, press one.  To erase and

7  rerecord, press two.  For --

8      (Beep.)

9      ANSWERING MACHINE:  Message delivered.  Exiting

10  the system.  Good-bye.

11      (Gap in tape.)

12      ANSWERING MACHINE:  You have reached the Del

13  Norte County sheriff's department.  If you have an

14  emergency, hang --

15      (Beep.)

16      ANSWERING MACHINE:  Using the dial-pad buttons --

17      (Beep.)

18      (Beep.  Beep, beep.  Beep.)

19      ANSWERING MACHINE:  Deputy Villareal.

20      ANSWERING MACHINE:  To accept --

21      (Beep.)

22      ANSWERING MACHINE:  Deputy Villareal --

23      ANSWERING MACHINE:  -- is not available at the

24  moment.  At the tone, record your message.  To end your

25  recording, press number sign.  To reach an operator, press

3

1  zero.

2        (Beep.)

3        MR. GIMBEL:  We'll continuing on -- keeping in

4  mind, I'm really a bad orator, by my own acknowledgment,

5  and I'm very, very tired of what -- waht pigs do; and it's

6  very difficult being saddled with the shit that they do and

7  never having it, you know -- like, sticks to you like glue,

8  you know, because they're such egotistical shit mouths in

9  so many cases.  It will continue to.  And even the courts

10  tend to see things -- cover up -- cover their eyes to total

11  malfeasances that are (gap in sound.)  Anyway, you saw --

12  looked at the papers; and you're asked -- you're saying,

13  "Well, I don't see the vehicle license number on here."

14  Okay.  34630(a), "Although the vehicle may not be

15    specifically described in the policy --" hey, what about

16  that, shit mouth?  I'll tell you what about that.  I'll

17  tell you that I think there's actionable tort here and that

18  you are precisely guilty.  You spent about a half hour back

19  there pretending some nonsense over looking into my

20  insurance, wasting my time.  I would definitely call --

21  call that false -- wrongful and false detainment in a civil

22  action.  Based on the smell of pigs that I've -- I've had

23  in my life these last couple of years, in my eyes, even

24  though this may look a little extreme to some, it doesn't

25  really to me, based on the treatment that I perceived

4

1  {it's-sic} somewhere in the vicinity of a hundred million dollars'

2  wrongful and unlawful detainment.

3      There are two kinds of laws, by certain sets:

4  One is -- the one group will tell you don't do this and

5  if you do, these are the consequences (unintelligible)

6  penalty. All the others are provisions. This particular

7  area of code in the Vehicle Code 16020, for example, (a),

8  is a provision -- a provision of law. It is a statute, the

9  the same as any other statute that tells you you don't do

10  something. This one is the provision that tells you you

11  can do something. Now, once you have been accord (sic) of

12  that provision and gone about it in all legitimate

13  recognized ways, there is no one that can take it from you.

14      Unfortunately, for your shit-mouth face, Mr.

15  Shit-mouth Villareal, you tried to take it away from me

16  because you are ignorant of the law. Have you ever heard

17  people try to make -- when they're up on the -- you know,

18  they are defendants, People of the State of California are

19  doing something and they say, "We're sorry, Mr. defendant,

20  but ignorance is no excuse"? It can be a mitigation, but

21  it -- it is not that often an excuse, right? In fact, I

22  had more on that. Witness -- to witness -- to wit --

23      ANSWERING MACHINE: Your recording is too long.

24  To replay your recording, press one.
       (Beep.)

5

1      ANSWERING MACHINE:  Message delivered.  Exiting

2  the systems.  Good-bye.

3      (Gap in tape.)

4      ANSWERING MACHINE:  Your have reached the Del

5  Norte --

6      (Beep.)

7      ANSWERING MACHINE:  Using the dial-pad buttons,

8  please spell the last name of the person --

9      (Beep.)

10      (Beep.  Beep, beep.)

11      ANSWERING MACHINE:  Deputy Villareal.

12      (Beep.)

13      ANSWERING MACHINE:  Deputy Villareal --

14      ANSWERING MACHINE:  -- is not available at the

15  moment.  At the tone, record your message.  To end your

16  recording, press number sign.  To reach an operator, press

17  zero.

18      (Beep.)

19      MR. GIMBEL:  To wit:  Mr. Villareal, the people

20  in the system that you've (sic) undoubtedly aware and have

21  seen at that stage where they're at sentencing in some

22  matter, you hear the Judge -- in every instance, he'll say

23  something like, "You are to obey all laws."

24      Now, the fact that they didn't is why they're

25  there in the first place.  So we all no, do we not, Mr.

6

1  Shit Mouth, that every citizen is being told that by

2  society, and especially by the people that are so called

3  empowered to enforce the laws. They intend this to evince

4  it. It is the state of affairs at hand. You are to obey

5  all laws with said law and before it was ever said. It's

6  as simple as realizing that these people wouldn't be here

7  had they understood that. You are -- since you are not to

8  break a law, it is implicit in society, that it has always

9  been intended and said by society at large, you are to obey

10  all laws. The Judge is just reminding this guy who got in

11  trouble, you know, at the time of sentencing and some

12  alleged conviction, right? Well, okay.

13      You, Mr. Mother-fuck Mouth, disobeyed the law.

14  What do you do about it? You disobeyed the law which gives

15  me a certain provision, by statute, to be self-insured; and

16  I had the correct papers on me. You not only fucking

17  disobeyed it, you wasted a half a fucking hour of my time

18  and my pursuit of life and happiness. And then you had the

19  fucking audacity to slough that shit off by causing me

20  another couple of days in preparation, which, in my state

21  of health, it is actually a couple of days of state of

22  preparation that I have been caused in and about the time

23  at which I am defecting (sic) appearance over a pile of

24  shit that you generated that is not even up to being a pile

25  of shit, shit mouth. Do I make myself clear? Yes, I

7

Exhibit C

| DATE | Time | | Duration |
|------|------|---|----------|
| May 21, 2006 | 10:05:29 | AM | 3:53 |
| May 21, 2006 | 10:09:35 | AM | 3:40 |
| May 21, 2006 | 10:13:30 | AM | 3:42 |
| May 21, 2006 | 10:17:24 | AM | 3:51 |
| May 21, 2006 | 10:21:48 | AM | 2:46 |
| May 21, 2006 | 10:31:02 | AM | 3:48 |
| May 21, 2006 | 10:35:02 | AM | 3:47 |
| May 21, 2006 | 10:40:12 | AM | 3:44 |
| May 21, 2006 | 10:44:40 | AM | 3:41 |
| May 21, 2006 | 10:50:50 | AM | 1:08 |
| May 21, 2006 | 10:55:40 | AM | 3:07 |
| May 21, 2006 | 11:12:10 | AM | 3:45 |
| May 21, 2006 | 11:16:03 | AM | 3:41 |
| May 21, 2006 | 11:22:43 | AM | 1:18 |
| May 29, 2006 | 9:47:26 | PM | 1:29 |

**I, John Gimbel, certify under penalty of perjury, that the above sheriff's phone log is the log of th** **subject speech in case A115201, same log given to me by the Del Norte D.A's office about** **mid-December 2006.**

Feb 15, 2007

## PROOF OF SERVICE BY MAIL, PERSONAL DELIVERY, OVERNIGHT MAIL, OR FACSIMILE TRANSMISSION

I am a citizen of the United States and a resident of Humboldt County; I am over the age of eighteen (18) years; my address is *PO Box 4221, Arcata CA 95518*

On *Feb. 23, 2007*      I served the within on the interested parties in said action:

____X____ By following the ordinary business practice, placing on that date at my place of business, a true copy there of enclosed in a sealed envelope(s) with postage thereon fully prepaid, for collection and mailing with the United States Postal Service at *Arcata* California, where it would be deposited with the United States Postal Service that same day in the ordinary course of business addressed as follows:

Calif. Court of Appeal  (1 orig plus 5)
350 McAllister Street
San Francisco, CA 94102

Calif. Supreme Court (4 copies)
350 McAllister Street
San Francisco, CA 94102

Del Norte Superior Court
450 "H" St.
Rm 209
Crescent City, CA 95501

Dohn Henion
981 "H" St.
Crescent City, CA.
95531

_____ By personally delivering a copy of said document(s) on the party(ies) named below at the following address(es):

_____ By following the ordinary business practice, placing on that date at my place of business, the above documents for deposit that same day in a box or other facility regularly maintained by Federal Express, in an envelope or package designated by Federal Express, with delivery fees paid or provided for as follows:

_____ By transmitting by facsimile machine, telephone number 707 464 5908, to the party(ies) named below at the facsimile machine telephone number listed below. The facsimile machine I used complied with California Rules of Court, rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

Name:_____          Facsimile No: _____
Name:_____          Facsimile No: _____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this *23rd day of Feb,* , 2007 at Eureka, California.

*Judith Foster*
Judith Foster